# CHARLESTON

STAFFORD v. COUNTY COURT.

Submitted May 8, 1905, Decided May 27, 1905.

1. ELECTION—*Notice of Contest—When Presented.*

The provision of section 2, chapter 6, Code of 1899, that notice of a contest of election to county office shall be presented to the "first term" of the county court after notice of contest is delivered to the contestee, means the first regular term, not a special term. (p. 90).

2. ELECTION—*Statute Construed.*

The provision of section 1, chapter 6, Code of 1899, that notice of contest for a county office shall be given within ten days after the result of an election has been declared, means the last legal binding declaration of result, where there have been two declarations, one irregular. (p. 93).

3. ELECTION—*Contest—Time of Filing Notice.*

The provision of section 2, chapter 6, Code of 1899, that a pending contest for a county office shall not be continued more than three months after the election, applies only to a contest actually pending, and does not apply to or limit the time for giving or filing notice of contest. (p. 90).

4. CONTESTED ELECTION—*Commissioner of County Coart — When Competent to Act in Contest.*

A commissioner of a county court is competent to act in a contest for a county office in that court though there is pending between him and another person a contest for his office involving the same matters of law or fact in such contest between others for another county office. (p. 91).

Petition by John L. Stafford for a writ of *mandamus* to

the county court of Mingo county and others.    Peremptory
writ awarded.

*Mandamus Awarded.*

Stokes & Bronson and Brown & Campbell, for peti-
tioner.

. Mollohan, McClintic & Mathews, S. U. G. Rhodes,
and Sheppard & Goodykoontz, for respondents.

Brannon, President:

John L. Stafford and John A. Sheppard were candidates
at the election 8th November, 1904, for the office of prosecut-
ing attorney of Mingo county.    A count by the canvassers
of the returns of the election showed that Stafford had been
elected and he was so declared.    A recount was demanded by
Sheppard.    Pending the recount Stafford instituted a pro-
ceeding in the Supreme Court affecting such recount.    And
this Court awarded a *mandamus* directing the board of can-
vassers as to the manner and proceedure of such recount,
commanding them to reconvene and recount the vote for said
office under principles signified by this Court in its opinion,
as will appear from a report of the case of *Stafford* v. *Board*
*of Canvassers*, (49 S. E. 641,) 56 W. Va. 670.    Pursuant to the
mandate of the Supreme Court the canvassers met and pro-
ceeded with the recount, and on the 2nd day of February,
1905, the canvassers found and declared that Sheppard had
been elected.    On the 10th day of February, 1905, Stafford
served a notice upon Sheppard that he would contest his elec-
tion and file the notice with the county court at its next
term.    On the 24th day of February, the county court met
in regular session, and Stafford presented to it the said notice
of contest and asked that it. be filed and the proceeding
docketed in said county court, but the court refused to enter-
tain or docket the notice; and later Stafford asked this Court
to award a *mandamus* to compel the county court and its
members to allow said notice of contest to be filed and to
docket the contest proceeding and hear and determine the
same.

One question in this case is this: After the notice of con-
test had been served a special term of the county court was
held.    Its call did not include this contested election case as

a matter for its action, and the notice of contest was not presented at that special term, but it was presented at the next regular term. It is said that the county court was justified in refusing to docket the case on the ground that the notice was not presented to the county court at its first term after declaration of the result of the election, since the Code of 1899, chapter 6, section 3, says: "Notice of contest shall be presented to the county court at its first term after the same is delivered to the person whose election is contested * * and the same shall be docketed for trial at that Court." This presents the question whether a special term of the court is the first term after service of notice of contest under this statute. We think it is not. "When a statute speaks of terms, the terms fixed by law are meant, not special terms appointed by the court." *Tompkins* v. *Clackamas*, 11 Ore. 366; *Smith* v. *Cutter*, 10 Wend. 591. We think that, as a general rule, when a statute requires a thing to be done at a term of court it means a regular term. This is, and ought to be, the rule, unless something in the statute calls for another meaning. We should not incline to a construction which would defeat the contestant from having a hearing. But outside of that consideration we say, that the times of regular term are known to the people, while special terms have no regularity, sitting only when called for particular business specified in the call. No other business than that specified in the call can be acted on at a special term. *Hamilton* v. *County Court*, 38 W. Va. 71. The notice of a special term is of limited publication—only posted at the court house door, perhaps for the short term of only two days. Few persons know of such session, and it would be a harsh construction of the statute to say that "First term" means a special term not known to the community at large. Such a construction would be hurtful and often defeat just rights and work surprise and wrong.

In support of the claim that the notice was presented to the county court too late it is further argued that the Code of 1899, chapter 6, section 3, contains the language, "The hearing may be continued from time to time by the court, if it be shown that justice and right require it, but not beyond three months from the date of election." From this statute it is argued that more than three months had passed from

the election to the day when the notice of contest was presented to the county court, and as that statute contemplates that the contest must be ended within three months from the election, it follows that the notice commencing the contest cannot be filed in the court after three months from the election. To this we reply: 1. That language refers to a contest proceeding already docketed in the court. It presupposes that a notice of contest has been filed and the proceeding on the court docket, and it is designed to forbid delay and procrastination in the hearing and decision of the case. It is not designed to fix a time for the commencement of the proceeding. That is done by those other provisions of the statute fixing the time within which notice must be served by the contestant on the contestee, and fixing the time for the presentation of that notice to the county court. The provision just quoted has no relation to the commencement of the case, to the origination of the case, but only to its continuance as a pending case after it had been once brought into being. 2. Though it is not involved in this case, is not that provision forbidding a continuance beyond three months only directory? True, the language is prohibitory in saying that the case shall not be continued beyond three months; but I doubt gravely whether non-compliance with it would work a discontinuance of the case. I should hesitate long before so holding.

Another question in this case is this: Two of the members of the county court were voted for at the same election, and their election was contested on the same grounds involved in the contest between Stafford and Sheppard. When Stafford presented his notice of contest and asked that it be filed and docketed Sheppard objected. It is urged, in justification of the refusal of the court to entertain the case, that two of the commissioners composing the court were interested. We cannot yield to the contention that they were so related to the case that they could not act. It is a fixed rule that an interested judge may pass any order necessary to bring the cause before the tribunal, where nothing is decided, controlling the case—mere orders to advance the cause for final hearing. *Findley* v. *Smith*, 42 W. Va. 299. But it is said that these commissioners could not pass on the objection made to the filing of the notice and docketing the case, be-

cause that would involve questions going to the right to institute the case. Well, the statute above quoted is mandatory in requiring the docketing the case so as to bring it into being, and surely they could have done that. The notice could have been filed, objection to it stated on the record and that objection stand for future decision. I do not see but that a circuit judge, though interested, could do that much. That would not decide on the objection to the proceeding. Surely the action of a circuit judge in simply filing a paper, or a motion, or to docket a case would not render his action irregular or void, because it would leave the whole matter open for decision by a competent judge. Those commissioners were bound to docket that notice, so as to bring the contest proceeding into being, and state the objection made by the contestee, or enter a motion to quash or dismiss. They were bound to do this much. Certainly the accidental circumstance of two commissioners being interested would not deny Stafford the right to be heard. To deny his motion to docket would likely have defeated any chance for him to be heard. Again, the Code gives him a right to an appeal against a partial judgment and that would be defeated. But, in the second place, we hold that those two commissioners were bound to do, not only so much as just indicated, but to decide that objection to the docketing of the notice, or any other matter and the full merits of the case, from the necessity of the particular case. The constitution, Art. 8, section 24, declares that the county court shall, in all cases of contest, judge of the election of all county officers. This makes the county court the sole judge of such contests. The Constitution, Art. 4, section 11, says that the legislature shall prescribe the manner of determing contested elections, and in the Code of 1899, chapter 6, the legislature has given sole and exclusive jurisdiction to the county court to try contested elections for county offices, and it could not have committed it to other hands than the county court. The law makes no provision for substituting another commissioner in place of an interested one, or for the transfer of the case to another tribunal, or any other mode of hearing when a commissioner is interested. If these commissioners did not act, then the contestant was denied justice, and that high and commanding, and I will add, sacred provision of the Consti-

tution, Art. 3, section 17, would be violated, reading: "The courts of this state shall be open, and every person, for an injury done to him, in his person, property or reputation, shall have remedy by due course of law; and justice shall be administered without sale, denial or delay." Those commissioners had to act from the very necessity of the case. Nobody else could act. That necessity constitutes an exception to the general rule that a judge cannot act in his own case. 17 Am. & Eng. Ency. Law, (2d. Ed.), 744. Furthermore, those commissioners were not so interested in the case as to forbid their acting in it. They were interested no farther than that the same question of law was common to this contest and their own. That is not enough to disqualify them. *Coal Co.* v. *Doolittle,* 54 W. Va. 210, which holds that in order to disqualify, the interest of the judge must be in the subject matter of the cause, and not merely in the legal question involved in it. The mere fact that the same facts or law arise in two cases will not, in law, prevent a judge from acting, because the decision in one case is not *res judicata,* either conclusive or even admissible in the other. The parties are not the same. Frequently a judge in such a case, out of mere delicacy or feeling of propriety within his own breast, declines to act; but he can act, indeed may be compelled to act by a suitor. But more clearly still, where the law provides no one else to try the case we cannot excuse these commissioners, and defeat a citizen's right to a hearing of his cause under the law of the land.

Another question in the case is this. The Code of 1899, chapter 6, section 1, says that any one contesting an election of a county officer "shall, within ten days after the result of the election is declared, give notice in writing of such intention." It is said in this case that the first declaration of the election was made long before the notice was served, much more than ten days; that the notice could have been given after the first declaration; that the notice which was presented to the court having been served more than ten days after the first declaration of result was too late. When, under the mandate of this Court, the county court reconvened and recounted the vote and declared the result, that last declaration was the effective one. It superseded the first. The first was then as if it never had been made. If we accord this last declara-

tion any force at all, and we must, that force must be full force, and it nullifies the first declaration of result and stands itself as the only valid declaration of the result, and notice of contest served within ten days after that declaration is valid.

We therefore award a peremptory *mandamus* to the county court requiring it to file the said notice of contest and docket the proceeding and proceed to hear and determine the same according to law.

It is hardly necessary to add that *mandamus* lies in such case. *Richardson* v. *Farrar*, 88 Va. 760; *Morris ex parte*, 11 Grat. 292; *Roberts* v. *Paul*, 50 W. Va. 528.

*Mandamus Awarded.*